The judgment appealed from is affirmed at plaintiff's cost.

O'NIELL, C. J., does not take part.

**2 So.2d 207**

**STATE v. REGENBOGEN.**

No. 35932.

April 28, 1941.

Herman L. Midlo, of New Orleans, for appellant.

John F. Connolly, of New Orleans, for appellee.

ODOM, Justice.

The State, alleging that the defendant Lewis Regenbogen was engaged in the business of "repairing and upholstering furniture", ruled him to show cause why he should not pay a license tax for the years 1937 and 1938. The amount demanded was $125 for each of those years.

The defendant in answer to the rule denied that he owed any license tax, his defense being that he was engaged in a mechanical pursuit and was therefore exempt from the payment of such tax under Section 8, Article X, of the State Constitution. He alleged that he was engaged in the business of "furniture repairing, upholstering and cabinet-making". There was judgment in favor of the State as prayed for, and defendant appealed.

Section 8, Article X, of the Constitution, as amended by Act 77 of 1934, provides that license taxes may be levied on such classes of persons, associations of persons, and corporations pursuing any "trade, business, occupation, vocation or profession, as the Legislature may deem

proper, except clerks, laborers, ministers of religion, school teachers, graduated train nurses, those engaged in mechanical, agricultural or horticultural pursuits or in operating saw mills".

The testimony taken at the trial of the rule showed beyond question that the defendant is engaged in a mechanical pursuit. He takes old, broken, damaged furniture, repairs and refinishes it; makes new cushions for old chairs, sofas, couches, lounges, etc.; makes coverings for such cushions, and repairs old cushions and the coverings thereof. He sends out into the city for such old furniture, brings it to his place of business. He was asked, "When an old piece of furniture comes in, what do you do?" He answered:

"Strip it down to the wood, take off the foundation, and springs and rebuild it, put in the springs, tie twine on the springs, put the white cotton around and then the tapestry on top of the cotton, that we are going to use and then put braid around it."

He was asked what he did about repairing furniture and said:

"In the line of repairing or wood work, a piece might be broken on an arm or a leg or a part of the body and we repair it and deliver it and besides that we do the upholstering I just mentioned."

He testified that all this work is done "manually". This is not disputed by the State. He was asked whether he did any of this work himself, and he said that he did. Specifically he stated:

"I cut the goods myself, which means a big difference if you are not careful. If you don't cut the material right, it means a big loss on a job and therefore, I have to do the main work myself."

He was asked how many hours of work he did himself in a week, and he said:

"I get up at Five thirty or Six o-clock in the morning and work sometimes until seven thirty at night,—not all the time, but three or four times a week."

He testified that at the time of the trial he had six people in his employ. One of these was a young lady who stayed in the office, answered telephone calls, made out the bills, using a typewriter for that purpose. Another was a bookkeeper who spent one day in each week at his establishment. Three others assisted the defendant in doing the kind of work described above. Another was a truck driver who went out into the city, picked up the old furniture to be repaired, brought it to the repair shop, and delivered it when finished. The truck driver, when not engaged in picking up or delivering the furniture, worked at the shop as a helper.

In describing the kind of work done by his helpers, defendant said that some stripped the furniture and picked moss, that others washed and cleaned up furniture, and that some did what is called "Springing up, putting the cotton foundation on". One, he said, was a general handy-man around the place, cleaned up the shop and the banquette.

That the defendant and these helpers do the work of repairing and upholstering with their own hands is not disputed by the State. Defendant was asked the value

of the machinery which he had in his shop, and stated that he did not know but supposed that it was worth about $1,000. There is no testimony showing just what kind of machinery or tools he had or just how the machinery or tools were used in doing the work. Defendant testified that his workshop is the downstairs portion of the building which he and his family occupy as a residence.

The gross receipts derived from defendant's business for each of the years 1936 and 1937 were between $16,000 and $20,000, and for the year 1936 he paid his employees the sum of $5,433.22. It was admitted that for the year 1937 he spent for that purpose approximately the same amount.

The work done by defendant and his helpers, except by the bookkeeper and the telephone girl, is manual. They do the work with their hands. Defendant is not the proprietor of a business, whose principal task is to superintend the work of his employees. Except on rare occasions when he goes out to make estimates, he works constantly in the workshop. He is a mechanic who works at his trade and employs helpers.

In the case of City of New Orleans v. A. Lagman & Son, 43 La.Ann. 1180, 10 So. 244, Lagman and his sons were engaged together in the building of houses and employed others to assist them, but they themselves worked as carpenters. It was held that they were exempt from the payment of a license tax.

In City of New Orleans v. Bayley, 35 La.Ann. 545, it was held that the mere

fact that one who is engaged in a mechanical pursuit employs others to assist him does not deprive him of the right of exemption.

In State v. Chicago Hat Works, 174 La. 814, 141 So. 844, where all of the earlier cases were cited and reviewed, it was held that an owner working every day like other workmen and using his hands and machinery in cleaning and blocking hats was engaged in a mechanical pursuit and exempt from the payment of a license tax.

In State v. Up-To-Date Shoe Repairing Co., Inc., 175 La. 917, 144 So. 714, it was held that the business of shoe repairing was a mechanical pursuit within the constitutional provision exempting persons engaged in "mechanical pursuits" from the payment of license taxes, but that the exemption did not apply to a corporation engaged in that business because only "persons" so engaged are exempt.

Counsel for the State cite and rely upon State v. Tung, 183 La. 281, 163 So. 101, 100 A.L.R. 1030; State v. Levy, 190 La. 511, 182 So. 659; State v. Crescent City Laundries, 184 La. 17, 165 So. 315; and State v. Banner Cleaners & Dyers, 184 La. 997, 168 So. 127.

None of these cases has any application to the one at bar. In the Tung case, the defendant operated a large central laundry plant and 10 branches, where clothes or other articles to be laundered, cleaned, or pressed were received and delivered. He owned and used 25 machines operated by steam, and, according to his books, his machinery and equipment was valued at $41,000, and his furniture and fixtures, in-

cluding typewriters and an adding machine, were valued in excess of $4,000. It was held that he could not be classed as a mere launderer pursuing his trade with the aid of other followers of the same trade.

In the Levy case, defendant operated a department for the repair, dyeing, and polishing of shoes, and for the sale of shoe accessories for the Maison Blanche Company. The defendant was to pay that company 15 per cent of the gross receipts received by the department and guaranteed that the 15 per cent would not be less than $3,600 per annum. All the advertisement of the department was to be under the supervision of the Maison Blanche Company, and defendant operated the department under a contract with that company. He was a trained cobbler and from time to time did such work in the department. But his main business was to supervise the work of the department of which he was the head. It was held that defendant was a "proprietor of a department in a department store", was not engaged in a mechanical pursuit, and was therefore not exempt from the payment of the occupational license tax.

In the Crescent City Laundries case, the defendant operated seven large and widely separated plants in the City of New Orleans, from which he derived a gross annual revenue exceeding $1,000,000. He did an extensive steam dyeing, laundering, cleaning, and pressing business. The court held that defendant was not a mechanic performing his work with his own hands

with the help of a few assistants. The exemption he claimed was denied him.

In State v. Banner Cleaners & Dyers Co., the only question involved was whether Section 25, Act 190 of 1932, as interpreted by certain recent decisions of this court, was violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

For the reasons assigned, the judgment appealed from is reversed, and the rule brought by the State is dismissed.

O'NIELL, C. J., does not take part.